United States District Court
Southern District of Texas
FILED

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION

APR 2 1 2020

David J. Bradley, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| | § |
| v. | § |
| | § |
| JULIAN YBARRA | § |
| KRYSTAL YBARRA | § |

M-20-618

## CRIMINAL INFORMATION

**THE UNITED STATES ATTORNEY CHARGES:**

At all times material to this Criminal Information:

### General Allegations

1. TRICARE was a health care insurance program of the United States Department of Defense. TRICARE provided civilian health benefits for military personnel (both active duty and reservists), military retirees, military dependents, and others registered in the Defense Enrollment Eligibility Reporting System ("DEERS").

2. There were two types of beneficiaries under the TRICARE program: (a) Sponsors—active duty, retired and Guard/Reserve members, and (b) Family Members—spouses and children who were registered in DEERS.

3. In order to pay a claim for prescription medication101, TRICARE required that the billed item or service be medically necessary, properly prescribed by a licensed physician and actually provided to a TRICARE beneficiary.

4. TRICARE was a health care benefit program as defined by Title 18, United States Code, Section 24(b), and "Federal health care program," as defined in Title 42, United States Code, Section 1320a-7b.

5. Private insurance plans, including but not limited to Blue Cross Blue Shield, CVS Caremark, Express Scripts, provided health care insurance benefits, including prescription medication coverage, to employees, dependents, and other covered individuals under private insurance contracts, including coverage for prescription medication. ("Private Insurance").

6. Private Insurance plans were "health care benefit programs" as defined by Title 18, United States Code, Section 24(b).

## The Defendants and Related Entities and Individuals

7. JULIAN YBARRA was a resident of Hidalgo County, Texas.

8. JULIAN YBARRA owned, operated, and controlled a number of entities, including Rysty Enterprises, Inc., a Texas corporation, doing business under the name Mission Wellness Center, and with a primary place of business within Hidalgo County, Texas.

9. KRYSTAL YBARRA was a resident of Hidalgo County, Texas, and the sister of JULIAN YBARRA.

10. PHARMACIST-1 was a resident of Hidalgo County, Texas, and owned and operated a pharmacy ("PHARMACY-1") located and doing business in Pharr, Hidalgo County, Texas and elsewhere.

11. PHARMACIST-2 was a resident of Harris County, Texas, and owned and operated one or more pharmacies ("PHARMACY-2") located and doing business in Houston, Harris County, Texas and elsewhere.

## COUNT 1
## CONSPIRACY TO COMMIT HEALTH CARE FRAUD
## (18 U.S.C. § 1349)

12. Paragraphs 1 through 11 are incorporated herein by reference.

13. From in or about 2014 and continuing through in or about December 2015, the exact dates being unknown, in the Southern District of Texas and elsewhere, defendants

**JULIAN YBARRA** and
**KRYSTAL YBARRA**

knowingly and willfully did combine, conspire, confederate and agree with each other and others known and unknown, to violate Title 18, United States Code, Section 1347, that is, to execute a scheme or artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, TRICARE and Private Insurance, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits items and services.

### Purpose of the Conspiracy

14. It was a purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by, among other things, submitting and causing the submission of false and fraudulent claims to healthcare benefit programs, such as TRICARE and Private Insurance, and diverting proceeds of the fraud for the personal use and benefit of defendants and their co-conspirators.

### Manner and Means of the Conspiracy

15. The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things, the following:

3

a. It was a part of the conspiracy that defendants opened and operated Mission Wellness Center, located and doing business within Hidalgo County, Texas and elsewhere.

b. It was further a part of the conspiracy that defendants caused, directed, and conspired with Nurse Practitioner-1 to sign false and fraudulent prescriptions for compound medication and medicated patches.

c. It was further a part of the conspiracy that Nurse Practitioner-1 signed prescriptions for patients that had not been seen by Nurse Practitioner-1.

d. It was further a part of the conspiracy that Nurse Practitioner-1 signed prescriptions for patients that did not want the prescribed medication;

e. It was further a part of the conspiracy that Nurse Practitioner-1 signed prescriptions for patients that did not have a medical necessity for the prescribed medication.

f. It was further a part of the conspiracy that defendants directed, or caused to be directed, prescriptions to pharmacies selected by defendants, without the knowledge, consent, or authorization of the individual to whom the medication was prescribed.

g. It was further a part of the conspiracy that defendants, or their co-conspirators, caused prescriptions to be re-filled without the knowledge, consent, or authorization of the patient.

h. It was further a part of the conspiracy that defendants, or their co-conspirators, did not deliver prescribed medications dispensed by pharmacies to the patient to whom the medication had been prescribed.

i. It was further a part of the conspiracy that defendants submitted, or caused the submission, of false and fraudulent prescriptions to PHARMACY-1.

j. It was further a part of the conspiracy that PHARMACY-1 submitted claims to health care benefit programs, including TRICARE and Private Insurance, based on false and fraudulent prescriptions that defendants submitted, or caused to be submitted, to PHARMACY-1.

k. It was further a part of the conspiracy that health care benefit programs, including TRICARE and Private Insurance, paid PHARMACY-1 more than approximately $2.1 Million for claims arising out of the false and fraudulent prescriptions from Nurse Practitioner-1 that defendants submitted, or caused to be submitted, to PHARMACY-1.

l. It was further a part of the conspiracy that defendants directed, or caused to be directed, prescriptions from other medical providers to PHARMACY-1, for which PHARMACY-1 submitted claims to TRICARE, Private Insurance, and other health care benefit programs and Federal health care benefit programs.

m. It was further a part of the conspiracy that PHARMACIST-1 paid defendants more than approximately $1.3 Million as payment for the false and fraudulent prescriptions from Nurse Practitioner-1 and other medical providers that defendants submitted, or caused to be submitted, to PHARMACY-1.

n. It was further a part of the conspiracy that defendants submitted, or caused to be submitted, false and fraudulent prescriptions to PHARMACY-2.

o. It was further a part of the conspiracy that PHARMACY-2 submitted claims to health care benefit programs, including TRICARE and Private Insurance, based on false and fraudulent prescriptions that defendants submitted, or caused to be submitted, to PHARMACY-2.

p. It was further a part of the conspiracy that health care benefit programs,

including TRICARE and Private Insurance, paid PHARMACY-2 more than approximately $3.5 Million for claims arising out of the false and fraudulent prescriptions that defendants submitted, or caused to be submitted, to PHARMACY-2.

q. It was further a part of the conspiracy that PHARMACIST-2 paid defendants more than approximately $1.5 Million as payment, in part, for the false and fraudulent prescriptions that defendants submitted, or caused to be submitted, to PHARMACY-2.

(All in violation of Title 18, United States Code, Section 1349.)

## COUNTS 2-10
## HEALTH CARE FRAUD
## (18 U.S.C. §§ 1347 and 2)

16. From in or about 2014 and continuing through in or about December 2015, the exact dates being unknown, in the Southern District of Texas and elsewhere, defendants

**JULIAN YBARRA and
KRYSTAL YBARRA**

along with others known and unknown, in connection with the delivery of and payment for health care benefits, items and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting interstate commerce, as defined in Title 18, United States Code, Section 24(b), that is TRICARE, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of TRICARE, all in violation of Title 18, United States Code, Section 1347.

17. On or about the dates listed below, in the Southern District of Texas and elsewhere, for the purpose of executing the scheme and artifice to defraud, and to aid and abet the same, defendants caused the transmission of the following false and fraudulent claims, which were for the beneficiaries, prescriptions, approximate dates, claim amount, and benefit program listed below.

| Count | Beneficiary | Prescription Number | Date (on or about) | Claim Amount | Benefit Program |
|---|---|---|---|---|---|
| 2 | B.M. | 60067 | 4/29/15 | $14,839.71 | Tricare |
| 3 | B.M. | 60037 | 4/29/15 | $4,080.50 | Tricare |
| 4 | B.M. | 60038 | 4/29/15 | $2,770.70 | Tricare |
| 5 | E.P. | 60075 | 4/29/15 | $14,839.71 | Tricare |

| 6 | E.P. | 60033 | 4/29/15 | $3,625.66 | Tricare |
| 7 | E.P. | 60034 | 4/29/15 | $2,770.70 | Tricare |
| 8 | H.A. | 60059 | 4/29/15 | $14,839.71 | Tricare |
| 9 | H.A. | 60023 | 4/29/15 | $3,625.66 | Tricare |
| 10 | H.A. | 60024 | 4/29/15 | $2,770.70 | Tricare |

(All in violation of Title 18, United States Code, Sections 1347 and 2.)

## COUNT 11
## AGGRAVATED IDENTITY THEFT
## (18 .S.C. § 1028A and 2)

18.     On or about April 29, 2015, in the Southern District of Texas, and elsewhere

**JULIAN YBARRA** and
**KRYSTAL YBARRA**

defendants herein, aided and abetted by each other and others known and unknown, did knowingly transfer, possess and use, without lawful authority, a means of identification of another person, to-wit, the date of birth, social security number, and other unique personally identifiable information of beneficiary B.M., during and in relation to a violation of Title 18, United States Code, Sections 1349 and 1347 (conspiracy to commit health care fraud, and health care fraud).

(All in violation of Title 18, United States Code, Section 1028A and 2)

## COUNT 12
## AGGRAVATED IDENTITY THEFT
## (19 .S.C. § 1028A and 2)

19. On or about April 29, 2015, in the Southern District of Texas, and elsewhere

**JULIAN YBARRA** and
**KRYSTAL YBARRA**

Defendants herein, aided and abetted by each other and others known and unknown, did knowingly transfer, possess and use, without lawful authority, a means of identification of another person, to-wit, the date of birth, social security number, and other unique personally identifiable information of beneficiary E.P., during and in relation to a violation of Title 18, United States Code, Sections 1349 and 1347 (conspiracy to commit health care fraud, and health care fraud).

(All in violation of Title 18, United States Code, Section 1028A)

# COUNT 13
# CONSPIRACY TO PAY AND RECEIVE ILLEGAL REMUNERATIONS
## (18 U.S.C. § 371 and 42 U.S.C. § 1320a-7b(b))

20. Paragraphs 1-11 are incorporated herein by reference.

21. From in or about 2014 and continuing through in or about May 2015, the exact dates being unknown, in the Southern District of Texas and elsewhere, defendants

**JULIAN YBARRA and
KRYSTAL YBARRA**

did knowingly and willfully combine, conspire, confederate and agree with others, known and unknown, to commit certain offenses against the United States, that is:

a. to violate Title 42, United States Code, Section 1320a-7b(b)(1), by knowingly and willfully soliciting and receiving remuneration, specifically kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by TRICARE and other Federal health care benefit programs; and for the purchasing, leasing, ordering, and arranging for, and recommending the purchasing, leasing, and ordering of any good, item, and service for which payment may be made in whole or in part by a Federal healthcare program; and

b. to violate Title 42, United States Code, Section 1320a-7b(b)(2), by knowingly and willfully offering and paying remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item and services for which payment may be made in whole or in part by TRICARE and other Federal health care benefit programs; and for the purchasing, leasing, ordering and arranging for and recommending the purchasing, leasing, and ordering of any good, item, and service for which payment may be made in whole or

11

in part by a Federal healthcare program.

### Purpose of the Conspiracy

22.   It was a purpose of the conspiracy for defendants, their co-conspirators, and others known and unknown, to unlawfully enrich themselves by paying and receiving kickbacks in exchange for the referral of prescriptions for which PHARMACY-1 and PHARMACY-2 submitted claims to TRICARE and other Federal health care benefit programs.

### Manner and Means of the Conspiracy

23.   The manner and means by which defendants and their co-conspirators sought to accomplish the objects of the conspiracy included, but were not limited to, the following:

  a.   It was a part of the conspiracy that defendants caused, directed, and conspired with Nurse Practitioner-1 to sign prescriptions for compound medication for TRICARE beneficiaries.

  b.   It was a further part of the conspiracy that defendants submitted, or caused to be submitted, prescriptions for TRICARE beneficiaries signed by Nurse Practitioner-1 to PHARMACY-1.

  c.   It was a further part of the conspiracy that defendants directed, or caused to be directed, prescriptions from other medical providers to PHARMACY-1, for which PHARMACY-1 submitted claims to Federal health care benefit programs.

  d.   It was a further part of the conspiracy that PHARMACIST-1 paid kickbacks to defendants and others known and unknown based on the amount received by PHARMACY-1 from TRICARE for the prescriptions signed by Nurse Practitioner-1.

  e.   It was a further part of the conspiracy that PHARMACIST-1 paid kickbacks to defendants and others known and unknown based on the amount received by

PHARMACY-1 from other Federal health care benefit programs for prescriptions from other medical providers submitted to PHARMACY-1 at the direction of defendants.

f. It was a further part of the conspiracy that defendants submitted, or caused to be submitted, prescriptions for TRICARE beneficiaries signed by Nurse Practitioner-1 to PHARMACY-2.

g. It was a further a part of the conspiracy that PHARMACIST-2 paid kickbacks to defendants and others known and unknown based on the amount received by PHARMACY-2 for the prescriptions for TRICARE beneficiaries signed by Nurse Practitioner-1.

## OVERT ACTS

24. In furtherance of the conspiracy, and to accomplish its object and purpose, the conspirators committed and caused to be committed, in the Southern District of Texas and elsewhere, the following overt acts:

   a. In or about April 2015, PHARMACIST-1 caused a check for approximately $4,543.00 to be paid to defendants.

   b. In or about April 2015, defendants caused the check for approximately $4,543.00 to be cashed or deposited into a bank account controlled by defendants.

   c. In or about April 2015, PHARMACIST-2 caused a wire transfer for approximately $214,129.73 to be paid to defendants.

   d. In or about May 2015, PHARMACIST-2 caused a wire transfer for approximately $144,898.41 to be paid to defendants.

   e. In or about May 2015, PHARMACIST-2 caused a wire transfer for

      approximately $350,083.62 to be paid to defendants.

    f. In or about May 2015, PHARMACIST-2 caused a check for approximately $5,000 to be paid to KRYSTAL YBARRA.

    g. In or about May 2015, PHARMACIST-2 caused a check for approximately $2,500 to be paid to KRYSTAL YBARRA.

(All in violation of Title 18, United States Code, Section 371)

## NOTICE OF CRIMINAL FORFEITURE
### (18 U.S.C. § 982(a)(7))

Pursuant to Title 18, United States Code, Section 982(a)(7), the United States gives notice that upon defendants' conviction of Counts 1 through 13 charged in this Information, the United States intends to seek forfeiture of all property, real or personal, which constitutes or is derived from proceeds traceable to such offenses.

### MONEY JUDGMENT AND SUBSTITUTE ASSETS

The United States gives notice that it will seek a money judgment against defendants. In the event that one or more conditions listed in Title 21, United States Code, Section 853(p) exist, the United States will seek to forfeit any other property of the Defendant up to the amount of the money judgment.

RYAN K. PATRICK
UNITED STATES ATTORNEY

_/s/ Andrew R. Swartz_
ANDREW R. SWARTZ
ASSISTANT UNITED STATES ATTORNEY